THEODORE N. MORRISON, Plaintiff in Error, v. WILLIAM KELLY, Defendant in Error.

### ERROR TO LA SALLE.

Where a trustee is appointed by deed, with a provision that in case of his decease or legal incapacity, that the chancellor shall be vested with all the trusts and confidences reposed in the trustee named, the chancellor may appoint a trustee, by virtue of his office, to execute the desire of the grantor, and the right of the chancellor does not depend upon his acquiring jurisdiction over the heirs and personal representatives of the *cestui que trust.*

Possession is actual when there is an occupancy, according to its adaptation to use; constructive, when there is a paramount title to it; and adverse, when there is such an appropriation of it as will inform the vicinage that it is in the exclusive use and enjoyment of some known person.

Under the registry laws, notice of a prior conveyance, is as effectual as the registry of the deed.

The second grantee will be affected by a notice to his grantor, if, with the exercise of ordinary prudence and caution, he could have ascertained the fact of such notice.

An open and visible occupation of land, is notice, to put a party on inquiry.

The delivery of a deed to a stranger, if ratified by the grantee, is good.

The delivery of a deed to one other than the grantee, having an interest in the land, is good.

The payment of taxes by any person extinguishes them, and if a voluntary attempt is made to pay them a second time, the last will be considered a gratuity to the taxing power.

The recording of a deed, is notice to a purchaser, although recorded after a conveyance to the grantor of such purchaser, if the fact is brought to his knowledge, or such notice of it as ought to have instigated inquiry, before conveyance to the purchaser.

A *cestui que trust,* has such an interest as will enable him to put a purchaser on inquiry.

The proof of notice of an unrecorded deed, may be established like any other fact.

THE plaintiff in error brought this action of ejectment to the Circuit Court of La Salle county. The declaration is in the usual form, and is for the recovery of the undivided one-half of a tract of land, of which the boundary line, beginning at the S. W. corner of the S. E. quarter section of section 6, in town 33 North, range 4 East of the 3rd principal meridian, runs thence east, along the south line of said section six, 15 chains; thence north, parallel with the east line of said section six, to the south line of the Fox River Feeder; thence westerly, along the south line of said Feeder, to the west line of said S. E. quarter section of said section six; thence south, along said west line, to the place of beginning, the title to which plaintiff claims in fee simple.

Defendant filed his plea of not guilty.

At the November term of said Circuit Court, A. D. 1858, the cause was tried, and verdict found for the defendant. Plaintiff

entered a motion for a new trial, which motion was overruled by the court, and judgment rendered against the plaintiff for costs.

Plaintiff filed a bill of exceptions, of which the following is an abstract:

Plaintiff read in evidence,

First. An exemplification of a patent from the United States to Henry Green, assignee of Allen H. Howland, for the west fraction of the south-east fractional quarter of section six, in township thirty-three north, of range four east of the third principal meridian. Said patent is dated October 1st, 1839.

Second. A warrantee deed from Henry Green to Aaron Reed, Sen., conveying the one undivided one-half of said west fraction in said patent described, to said Reed, in trust for and to the separate use of Catharine Howland, wife of Allen H. Howland, and providing that, in case of the decease or legal incapacity of said Reed, before the full execution, discharge and performance of all and singular the trusts in and by said deed created or declared, then, in either case, the trusts shall be executed, discharged and performed by the court of chancery of the judicial district or circuit in which La Salle county shall then be situated; and that the estates in and by said deed granted and conveyed to said Reed, shall, on the decease or legal incapacity of said Reed, vest in such court of chancery as aforesaid, subject to all and singular the trusts and confidences in said deed created and declared, and that said court of chancery shall exercise the same powers and perform all and singular the trusts that may remain unexecuted and unperformed, with the same legal effect as the said Reed might or could, were he capable of performing the same; and that the mode of performing said trusts shall be such as said court of chancery shall order or decree, or agreeable to the course of practice of said court. Said deed is dated December 26th, 1835, and was filed for record, March 24th, 1847, in the recorder's office of La Salle county, and duly recorded.

Third. A certain petition by Allen Howland and Catharine, his wife, Theodore N. Morrison and Ann Eliza, his wife, and Henry A. Howland, a minor, by George Howland, his next friend, filed in the Circuit Court of La Salle county, and State of Illinois, on the 1st day of March, A. D. 1852, and a decree of said Circuit Court, according to the prayer of said petition, appointing Theodore N. Morrison, trustee, in the place of Aaron Reed, Sen., deceased, and vesting the legal title in fee simple of, in and to the one undivided one-half of the west fraction of the south-east fractional quarter of section No. six, in township No. thirty-three north, and range four east of third principal merid-

ian, in Theodore N. Morrison, as fully and absolutely as the same was vested in the said Aaron Reed, Sen., by the said deed from Green to Reed.

The plaintiff then read in evidence a deed from Allen H. Howland and Catharine Howland, his wife, to Theodore N. Morrison, by which the said Catharine Howland and Allen H. Howland, her said husband, quitclaimed, released and conveyed to the said Theodore N. Morrison, all the interest which they had in and to the undivided one-half of the west fraction of the south-east fractional quarter of section six, township 33 north, range four east of the third principal meridian. Said deed was dated 12th of January, A. D. 1858, and duly recorded in the recorder's office of La Salle county.

The court permitted the said Allen H. Howland, husband of Catharine Howland, to testify, to which defendant objected ; the court overruled the objection, and defendant excepted. Said Howland testified that he was well acquainted with the premises described in the declaration, and they were a part of the said west fraction of the south-east quarter of section six, township thirty-three north, of range four east of the third principal meridian.

Plaintiff here rested his case.

The defendant, to maintain the issues on his part, read in evidence a deed from Henry Green to Wm. H. W. Cushman, for the one undivided one-half of the *North* fraction of south-east fractional quarter of section six, in township thirty-three north, of four east of the third principal meridian. Which deed was filed for record March 17, 1841, and bears date March 10, 1841.

And also a deed from the said Green to said Cushman, for the one undivided one-half of the west fraction of the south-east fractional quarter of said section six, dated March 28th, 1842, and filed for record, March 29th, 1842.

The defendant then read in evidence, receipts for the payment of taxes on the undivided one-half of the west fraction of the south-east fractional quarter of said section six, for the years 1848, 1849, 1850, 1851, 1852, 1853, 1854, and 1855, under the title derived through the conveyance from Green to Cushman. The tax receipt for 1849, was dated April 13, 1850. And it appeared that Kelly was in possession under the title, if any, which passed from Green to Cushman; Cushman having parted with the title after the recording of the deed from Green to Reed.

The plaintiff objected to the introduction of said receipts. The defendant then proved that they were executed by the collector of taxes, for the years respectively when they purported

Morrison *v.* Kelly.

to have been paid. The court then admitted them, and to the opinion of the court in so doing, the plaintiff excepted.

Defendant read in evidence a deed from Henry Green and wife to Henry L. Brush, for the undivided one-half of the west fraction of the south-east fractional quarter of said section six; dated August 31, 1835.

Defendant rested.

The plaintiff read in evidence a receipt for the payment of the taxes of 1849, which receipt is in the words and figures following, to wit:

"Received, Ottawa, March 18, 1850, of Allen H. Howland, by W. H. W. Cushman, thirty-nine 40-100 dollars, in full for taxes of 1849, upon personal property, and the following real estate, to wit:

| | | |
|---|---|---|
| 65½. | Undivided ½ S. fr. S. E. fr'l ¼, Sec. 1, T. 33, R. 3 E. <br> Undivided ⅓ N. fr. S. E. fr'l ¼, Sec. 1, T. 33, R. 3 E. <br> Undivided ⅔ E. fr. S. W. fr'l ¼, Sec. 1, T. 35, R. 3 E. | ........$9.45 |
| 80. | E. ⅓ N. W. ¼, Sec. 22, T. 33, R. 3 E. | 3.19 |
| 80. | W. ½ S. E. ¼, Sec. 18, T. 32, R. 4 E. | 2.97 |
| 160. | N. E. ¼, Sec. 20, T. 33, R. 4 E. | 6.26 |
| 10. | S. fr. N. W. ¼ fr'l Sec. 16, T. 33, R. 4 E. | 26 |
| 50. | Undivided ½ W. fr. S. E. fr'l ¼, Sec. 6, T. 33, R. 4 E.. | 2.04 |
| 69. | S. W. fr'l ¼, Sec. 6, T. 33, R. 4 E. | 4.54 |
| | S. ½ N. W. ¼ of Lot 3, Block 26, Town of Ottawa | 1.48 |
| | Lot 4, Block 86, State's Addition to Ottawa | 5.32 |
| | Personal property. | 3.89 |

$39.40

The plaintiff called *Dr. Howland,* who testified as follows:

My recollection is, that Mr. Cushman agreed to pay my taxes for the year 1849 for me; I gave him a schedule of the lands on which I had to pay the taxes for the year 1849; Mr. Cushman took the schedule and paid my taxes for the year 1849 for me, and kept the tax receipt several months, until I paid him; I paid the taxes of 1849 on the undivided one-half of the west fraction of the south-east fractional quarter of section six, township 33, range 4 east of the third principal meridian, under the deed from Henry Green to Dr. Reed; I had direction from Dr. Reed to pay the taxes of 1849; Dr. Reed furnished the money to pay these taxes indirectly; he held a note against me for five hundred dollars, and the money paid for these taxes was credited by Reed on my note to him.

In December, 1835, when Mr. Green made this deed to Dr. Reed, I had a field running across the line, between the two quarter sections, a part of the field being on the east side of the line; on the west fraction of the south-east fractional quarter of section six, I had a log house in the field, on the line between the two quarter sections; one-half of the log house was on the

east side of the line, and one-half on the west side; the field was made to extend across the line, between the two quarter sections, in order to get a pre-emption on both tracts, and which pre-emption I obtained in May, 1835; I had possession of the land, by myself or tenants, and cultivated this field each year, from 1833 until 1840; in the fall of 1833, I built a cabin on this tract, and built some fence on it, and in the spring of 1834 I made a field of seven acres on it and the adjoining tract—half on each tract; I continued to cultivate, and was in possession, by my tenants or by occupying and cultivating myself, every year until 1840; in the spring of 1840, I leased it to Alexander and went East, and did not return here until January, 1842; the deed from Green to Dr. Reed, was taken East, through mistake, by my wife, who was the daughter of Dr. Reed, and was not returned until 1847; I supposed that the deed had been recorded; after the conveyance by Green to Reed, I was in possession under the deed from Green to Reed, as the agent of Dr. Reed; in February, 1842, after I had returned from the East, I was looking over the records in the recorder's office, and found a deed from Green to Cushman, for the north fraction of section six, township thirty-three, range four; I went immediately to them to inquire what it meant; they were both at Cushman's store; I told Mr. Cushman about this deed, and asked him what it meant; he said, I suppose it is the land you used to own, or pretended to own, up in the bend of the Fox; what, said I, that land the field is on? he said it was; I told him that Green had before deeded that land to Dr. Reed, and I asked Mr. Green how he came to deed that land twice, if he meant that land, as the deed to Mr. Cushman called for the north fraction; he said it was a mistake, and he would clear the title by paying Mr. Cushman what he owed him, when he should sell his wheat; Mr. Cushman then said, if Mr. Green paid him he would give up the land. During five or six years subsequent, I had several conversations with Mr. Green and Cushman separately, in all of which Mr. Cushman said he would give it up when Green paid him, and Mr. Green invariably said he meant to clear the title. About 1849 or 1850, Mr. Green told me he had paid Cushman, and that Cushman could give up the land; I then told Mr. Cushman, at his residence, in front of Mechanics' Hall, that Green had told me that he had paid him what he owed him, and that he (Cushman) could now give up the land; Mr. Cushman replied, well, if he says so, *so it must be,* I suppose. I then asked Mr. Cushman when he could attend to the matter; he replied, he would attend to it in a short time; I had never before this heard one word about my owing Mr. Cushman anything; but when I asked him again when he would give up the land, he said he would give it

up when I paid him what I owed him ; and Mr. Green afterwards told me that Mr. Cushman was holding on to the land for some old demand which I owed him, Cushman. I gave him a deed for a piece of land to pay this demand, and he gave me a bond for reconveyance when I paid him ; I offered to give a mortgage of the land, but he insisted that the land should go to pay the demand, if I failed to pay it; the land conveyed by me to Cushman, was then worth much more than the demand he had against me. I afterwards asked him what demand he had against me ; he said it was the demand for which I conveyed him this land ; he said the land did not sell for enough to pay the demand ; I told him that he insisted on taking the land in payment of the demand, and that it would have sold for more than enough to pay this debt at the time he took the land.

Afterwards I had a conversation with Mr. Cushman ; I told him that if he did not attend to this matter soon, I should commence suit against him for the land ; I told him to figure up all the money due on the old bond, and the interest on it at ten per cent., and I would, for the sake of having the matter settled up, pay it to him, if he would give up the land.

I believe there were frequent conversations between Mr. Cushman and myself, about my old Woodworth controversy ; this controversy arose about my improvements and possession of the premises now in controversy, for the purpose of getting a pre-emption ; Woodworth having contested my right to a pre-emption.

He, Cushman, was a witness in that suit; I spoke to him, or in his presence, about my improvements on the land now in controversy ; when I returned from the East, in January, 1842, the house remained there ; the roof was off, and the logs partly down ; some of the fence was still remaining ; the field was perfectly perceptible ; it was plowed in 1840 ; the field, house and orchard were all on there, and in good repair, until I went East in May, 1840 ; Mr. Green never exercised any acts of ownership over the land in controversy, but was a witness for me in 1837, in the suit with Dr. Woodworth, in which he swore that I had made improvements on it ; nor did he exercise any acts of ownership after he sold it to Cushman, except to steal the rails away, and this he denied to me over and over again ; said he had not meddled with them, and that the Irish must have stolen them.

Dr. Howland also testified that the consideration for the conveyance by Green to Brush, passed from Brush to him (Howland), and that Green received nothing for making this deed.

The plaintiff called one *Watkins*, who testified :

I am acquainted with the location of the west fraction of the south-east quarter of section six, township thirty-three, range

four, and know where the lines are. I lived near this land. I came there in 1833, and remained until 1835, when I went to Missouri, and came back, and staid until 1837. Lord built the house for Dr. Howland; the house stood on the line between the two quarter sections, and on the west line of the fraction; there was a field inclosed of about ten acres; the field was situated on both quarter sections; about half of the field on the said west fraction of the south-east quarter, and half on the quarter west of it. The house stood in the inclosure. The house and field were made to extend on both quarters, for the purpose of getting a pre-emption on both tracts. About three or four acres of the field were cultivated in the years 1834 and 1835; not much more was cultivated while I was there; do not know, of my own knowledge, whether the field was cultivated in 1836 or not. I was here in 1837; in 1833 and 1834 the house was occupied by Disney. I went to Rock river in 1837, and returned in 1838; the ploughing was made in 1834; I think that afterwards nearly all of the field was plowed. Mr. Cushman was living here during all the time I was here. Dr. Howland's possession of this land was notorious. In the Woodworth suit the question was, whether Dr. Howland was in possession of this land or not, and whether he had made improvements.

The plaintiff called *Alexander*, who testified:

I know the land in controversy, spoken of by the other witnesses; I had a lease of it in 1840, and raised a crop on the land that year. (Plaintiff here read in evidence a lease from Dr. Howland to Alexander, which was identified as the one under which he occupied, and which was in the words and figures following, viz.:

Lease from Howland to Alexander of a field situated on the south half of section six, township thirty-three, range 4 east, in La Salle county, Ill., for the purpose of raising one summer's crop in the year 1840, Alexander agreeing to pay Howland one-third of the crops raised on the premises. Dated April 24th, 1840.)

Plaintiff called *L. B. Delano*, who testified:

I know the field that Alexander was on. I came here in 1837—it was a large field at that time. In June, 1837, my brother and I were on the place; there was a house on the place, and a family living in it; there was a fine orchard and garden on the place. I recollect of Alexander carrying on the place. I was on the place after Alexander had left the place; do not recollect what year; it was in the winter; there were improvements there then. The fence was partly down, and looked as if some one had been taking it away. Whole lengths

of the fence had been taken away in some places, in other places the fence was standing full height. The roof was off the house, and the logs nearly down on one side. Some of the apple trees were standing; the field was easily perceptible.

I could not tell anything about who had the title to the land—it was known as Howland's land. I think that it was in 1841 that I was on the place; it was after Alexander carried it on.

The plaintiff requested the court to give the jury the following instructions:

Although Cushman may not have known of the existence of the deed from Green to Reed at the time of the delivery of the deed from Green to him; yet, if the means of information that he possessed were such, and his attention so directed that by the exercise of ordinary prudence and caution, he would, after inquiry, have discovered the existence of the deed from Green to Reed, he must be deemed to have had notice of its existence, and the title from Green to Reed would be the better title.

And, if the facts are as mentioned in this instruction, the possession and payment of taxes for seven years would not make the title, under the deed from Green to Cushman, the best. It would not be claim and color of title made in good faith.

If, at the time Brush and Kelly derived title from Cushman, the deed from Green to Reed had been recorded in the recorder's office of La Salle county, they were purchasers with notice of the existence of this deed; and, if Cushman, at the time of his purchase, had notice to put him on inquiry, as mentioned in the first instruction, then the title under the deed from Green to Reed is better than that under the subsequent deed from Green to Cushman.

The court instruct the jury that, if Howland, either for his wife or as the agent of Reed, paid the taxes for 1849, before they were paid by Cushman; and, if it is not proved that Cushman, or those claiming under him, paid the taxes for seven successive years, not including the tax of 1849, then neither Cushman or those claiming under him, can claim any title by means of having paid taxes on said land and taking possession thereof.

If Cushman had knowledge of the unrecorded deed from Green to Reed when he made his purchase from Green, he cannot protect himself against said deed from Green to Reed. He is as effectually bound by knowledge of the existence of the prior deed, as he is by its registration. It is deemed an act of fraud in him to take a second deed under such circumstances; and whatever is sufficient to put him on inquiry as to the rights of others, is considered legal notice to him of those rights.

40

He is chargeable with knowledge of such facts as might be ascertained by the exercise of ordinary diligence and understanding. The actual possession of land is notice that the possessor has some interest therein. The party who purchases the same while that possession continues, takes the premises subject to that interest whatever it may be. The possession is sufficient to put him on inquiry as to the title of the possessor, and it is his own fault if he does not ascertain the extent and character of that title.

In order to constitute an actual possession of land, it is not necessary that the person claiming, or others claiming under him, should actually reside on the land. It is sufficient if the land is appropriated to individual use, and used in such a manner as to apprise the community or neighborhood of its locality, that the land is in the exclusive use and enjoyment of another, and the possession will be deemed coextensive with the title under which the occupant claims; and if, at the time this negotiation between Cushman and Green, for the conveyance of this land, commenced, there was such possession of the premises by Reed, or those claiming under his title, then Cushman is in law deemed to have notice, whether he actually knew of the possession or not.

The court modified this instruction by adding, at the end of it, these words, viz.: "The possession necessary to constitute notice to subsequent purchasers must be open and notorious, and continued to the time of the subsequent purchase, and in this case connected with the title from Green to Reed."

The court instruct the jury that the patent to Green, the deed from Green to Reed, and the proceedings of the court appointing Morrison trustee, in the place of Reed, prove a title in fee simple in the plaintiff to the land in the declaration mentioned, if the same is a part of the land described in the said two deeds and proceedings of the court, and that this is sufficient to entitle the plaintiff to recover, unless a better title in some other person is shown. If the jury find for the plaintiff, the form of their verdict will be as follows: We, the jury, find the defendant guilty of unlawfully withholding the premises in the declaration mentioned, in manner and form as therein alleged, and we further find the plaintiff seized of a fee simple estate in said premises.

The court instruct the jury that the production of the deed from Green to Reed, by the plaintiff in this suit, makes a *prima facie* case that this deed was delivered at or about the time of its date, and unless there is other evidence showing that it was not delivered, the jury should presume that it was delivered as above.

Morrison *v.* Kelly.

If, at the time of the occupation by Alexander, under Howland, the only legal title or claim that Howland had was under the deed from Green to Reed, then the possession of Alexander was under said deed, whether Howland disclosed to Alexander that Reed was the owner or not, and Alexander's possession would be notice that he was in possession under this deed to Reed.

The court instruct the jury, that it is necessary for a purchaser under a subsequent deed, in order to defeat the title under a prior unrecorded deed, to prove that there was a valuable consideration for the execution of said subsequent deed, passing from the grantee to the grantor.

The court instruct the jury that it does not affect the validity of the plaintiff's title in this case, that the deed from Green to Reed was made to protect property and keep it away from the creditors of Howland; even if this is so, it is not material.

The court modified this instruction by adding at the end thereof the following words, viz.: " This is the law, if such deed was not made with the intent and for the purpose to defraud or deceive those who shall purchase the lands therein described."

The court instruct the jury that, although Alexander's lease may have expired, and although he may have surrendered the possession of the premises to Howland, before the conveyance to Cushman, yet if they were, at the time of the execution of the deed from Green to Cushman, in the actual visible possession of Howland, claiming as the agent of Reed, or under his title, and such possession was such as mentioned in the fifth instruction, then Cushman is deemed in law to have had notice.

The court instruct the jury that, if Alexander was in possession under Howland, and Howland, at the time he let Alexander into the possession, was in possession as the agent of Reed, or under his title, that then the possession of Alexander was notice to put Cushman on inquiry.

The court instruct the jury that, if prior to the conveyance by Green to Cushman, he, Cushman, was informed by Howland that this land was his; and if at the time the title was in Reed, in trust for Howland's wife; and if Cushman, by exercising ordinary diligence in inquiring into the matter of Howland's claim to this land, would have discovered the existence of this trust deed, then he is deemed in law to have had notice of the existence of said deed.

The court modified this instruction by adding at the end thereof the following words, to wit: " It is for the jury to determine whether the claim by Howland to Cushman, that the

land was his, (if proven,) was or was not sufficient to satisfy a reasonable person that the title at the time was in Green.

The court gave the first, second, third, fourth, sixth, ninth, eleventh and twelfth, as asked; modified the fifth, tenth and thirteenth, as stated above; did not mark on the margin of the seventh either the word "given" or "refused," but read the same to the jury as the law, and refused the eighth instruction.

And to the opinion of the court in refusing said eighth instruction, and in modifying said fifth, tenth and thirteenth instructions, and each of them, the plaintiff at the time thereof excepted.

At the request of the defendant, the court gave the jury the following instructions:

That unless it is proven that the deed from Green and wife to Reed was delivered to Reed or Reed's agent, or the person for whose use and benefit it was made, it is not proven that any title passed by that deed.

Green's deed to Reed could pass the title to the land from Green to Reed only from the time it was delivered to Reed, or Reed's agent, or the person for whose use and benefit it was made.

A delivery of the deed from Green to Reed, to Howland, would be of no force, unless it is shown that Howland was the agent of Reed to receive the deed.

If the deed from Green to Cushman was filed for record, in the recorder's office, before the deed from Green to Reed was filed, then the deed to Cushman would hold the land as against Reed's deed, unless Cushman, at the time he received the deed, had notice of the existence of the deed to Reed.

Possession of the land in question by Alexander was not constructive notice to Cushman of Reed's claim, unless Alexander held under Reed, and unless his possession continued up to the time when Cushman made the purchase from Green, or the time when he received his conveyance.

Notice to Cushman by Howland, that Howland claimed the land as his own, is not notice to Cushman of the deed to Reed.

If Cushman had no notice of Reed's title when he purchased of Green, then Cushman, if his deed was recorded first, could give good title to Brush as against Reed's title, even if Brush had notice of Reed's deed when he purchased.

If possession is relied upon as notice of title, such possession, in order to amount to constructive notice, must be continued up to the time when the second purchase is made.

To give an unrecorded deed priority over a recorded one, on the ground that the grantee in the recorded deed had notice of

the unrecorded deed, the proof of such notice must be clear and satisfactory.

The burden of proof in this case, is upon the plaintiff; and, if upon any point necessary to be proved to make out the plaintiff's title, there is as much weight of proof for the defendant as for the plaintiff, the jury should find for the defendant.

Delivery by the grantor and acceptance by the grantee are essential to the validity of the deed. The deed takes effect only from its delivery, and there can be no delivery without acceptance either by the grantee or some one under his authority. And if the jury believe, from the evidence, the deed from Green to Reed was never delivered to Reed, or his agent, or the person for whose use and benefit it was made, or if delivered at all, not until after the deed from Green to Cushman was executed and recorded, then Cushman's title to the land is perfect under that deed.

If a description of a tract of land in a deed is such that the land, intended to be conveyed, can be located, and the references to the tract of land are such that the tract can be identified and distinguished by them, the grantee under such deed would hold the property.

If Howland had a field inclosed on the land in question, in 1840, and that field was abandoned, and the rails and other improvements had been removed from the land, and the land was vacant and unoccupied when Cushman purchased the land, the fact that the land had been occupied *previously* by Howland, would not be constructive notice to Cushman, at the time he purchased the land, of Reed's or Howland's title.

The possession of the land, which is constructive notice to a purchaser of the title of the occupant, must be an actual possession at the time. An old improvement, which has been abandoned, is not such notice.

If the jury believe from the evidence, that the witness Howland, received the deed from Green to Reed, and at the same time, or soon after, received the bond from Green to himself for the conveyance of the land, it is a circumstance to be considered in determining the question as to whether the deed was treated as valid or not.

And to the giving of each of said instructions the plaintiff objected; the court overruled the objection and gave each of said instructions, and to the giving of each of them the plaintiff excepted.

The jury found a verdict for the defendant; the plaintiff moved for a new trial; the court overruled the motion, and to the opinion of the court, in overruling said motion, the plaintiff

then and there excepted, and prays the court to sign and seal this his bill of exceptions, which is done.

LELAND & LELAND, and T. REED, for Plaintiff in Error.

B. C. COOK, for Defendant in Error.

WALKER, J. It is urged that the appointment of plaintiff, as trustee, to fill the place after the death of Aaron Reed, was irregular because the heirs of Reed were not made parties to the application. And that by the death of the trustee, his heirs became invested with the legal title, and as they were not parties to that proceeding they are still the owners of the legal title, and the plaintiff, by his appointment took no interest. The deed purports to convey the property to Aaron Reed, and to his heirs and assigns, and then declares the trust, and creates the power of the trustee over the estate. Had the grantor declared no trust, Reed would, under the language employed, have taken a fee simple estate of inheritance. But, it is the object of the declaration of the trusts, and the creation of the powers conferred upon the trustee, to limit and control the estate granted. The grantor may declare any use or trust, or confer any power upon the trustee or others, which he may choose, so that their object is not prohibited by law, by public policy, or good morals, and it will be binding. He may declare the objects of the trust, and confer the power to execute them upon the trustee or upon another. He may convey to a trustee for a limited period, and provide that at that period another may take, or that at the end of the time, or upon the happening of an event designated, a person named by the deed may nominate and appoint a trustee to execute the trust and perform the powers. It will not be contested that a grantor conveying to a trustee, may confer a power upon an officer, as the chief executive of the State, a circuit judge, a probate judge, or upon any court of record, the power to appoint a trustee, in the event of the death of the trustee named in the deed. Then if it was the object of the clause in this deed to confer upon the Circuit Court of La Salle, such a power, so soon as Reed's death occurred, the court became invested with jurisdiction to appoint a trustee, and such jurisdiction would not depend upon acquiring jurisdiction of his heirs or personal representatives. This deed provides, " That in case of the decease or legal incapacity of said Reed, before the full execution, discharge and performance of all and singular the trusts in and by said deed created or declared, then, in either case, the trusts shall be executed, discharged and performed by the court of chancery of the judicial

district or circuit in which La Salle county shall then be situated ; and that the estates in and by said deed granted and conveyed to said Reed, shall, on the decease or legal incapacity of said Reed, vest in such court of chancery, as aforesaid, subject to all and singular the trusts and confidences in said deed created and declared, and that said court of chancery shall exercise the same powers, and perform all and singular the trusts that may remain unexecuted and unperformed, with the same legal effect as the said Reed might or could, were he capable of performing the same ; and that the mode of performing said trusts shall be such as said court of chancery shall order or decree, or agreeable to the course of practice of said court." From this language it is clear and free from all doubt, that it was the intention of the grantor, in case of the death of Reed before the trust was executed, to confer upon the court the power to complete its execution, and expressly provides that it shall do so, in such a manner as the court shall order or decree, or according to the practice of the court. And when the court became satisfied of the death of the trustee, and that the trusts created by the deed were not fully executed, it became the duty of the court, on the application, to proceed to have the trust executed, precisely as if a trustee were to die without heirs, or a trustee in whom a personal trust and confidence is reposed by the deed, dies before he has carried out its provisions. In such cases it is the practice of the court of chancery rather than permit the trust to fail for want of a trustee, to appoint a suitable trustee, who succeeds to all the powers, rights and duties, as if he were named by the deed. We are, for these reasons, clearly of the opinion that the appointment of plaintiff, by the order of the court of chancery, was valid, and that he thereby succeeded to all the rights, powers and duties which the deed conferred upon Reed.

The doctrine is well recognized and established that a man may have the actual possession of real estate without a residence upon it. And it may be actual or constructive ; actual, when there is an occupancy, such as the property is capable of, according to its adaptation to use ; constructive, as when a person has the paramount title, which in contemplation of law draws to, and connects with it the possession. But to be adverse, it must be a *pedis possessio,* or an actual possession. And to constitute such a possession, there must be such an appropriation of the land to the individual, as will apprise the community in its vicinity that the land is in the exclusive use and enjoyment of such person. Trifling acts, doubtful and equivocal in their character, and which do not clearly indicate the intention with which they are performed, cannot be regarded as amounting

to possession. But it has been held that neither actual occupancy, cultivation, or residence, are necessary to constitute actual possession. *Ewing* v. *Burnett*, 11 Peters R. 53. And where the property is so situated as not to admit of any permanent, useful improvements, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim, has been held to be such possession as will create a bar under the statute of limitations. *Ewing* v. *Burnett*, 11 Peters R. 53. What acts may or may not constitute a possession, are necessarily varied, and depend to some extent upon the nature, locality and use to which the property may be applied, the situation of the parties, and a variety of circumstances necessarily have to be taken into consideration, in determining the question. They must necessarily be left to the jury, whose peculiar province it is, to pass upon the question of possession. *Ewing* v. *Burnett*, 11 Peters R. 53.

It is the settled doctrine of this court, and it is believed to be in Great Britain, and the various courts of the Union, that under the registry laws, a notice of the prior conveyance is as effectual as the registry of the deed. The object of recording the deed being to give notice to the world of the purchaser's claim of title, when that end is attained, whether by recording, actual notice, or such circumstances brought to the knowledge of the subsequent purchaser or creditor, as would induce a prudent man to make inquiry before he acted, answers the object of the statute. *Doyle* v. *Teas*, 4 Scam. R. 202. When the deed is filed and recorded in the proper office, it is frequently only constructive notice, and defeats the title of the second purchaser, not because he has seen the deed and has actual notice of its existence, but because he has the means afforded him of informing himself of the existence of the prior conveyance. It has always been held sufficient, if actual notice has come to the knowledge of the second grantee before his purchase. While there is a conflict of authorities as to what circumstances brought to his knowledge are sufficient notice to protect the holder under an unrecorded deed, against a subsequent purchaser, it has been held by this court that, " Where the court is satisfied that the subsequent purchaser acted in bad faith, and that he either had actual notice, or might have had that notice, had he not willfully or negligently shut his eyes against those lights, which with proper observation, would have led him to knowledge, he must suffer the consequences of his ignorance, and be held to have had notice so as to taint his purchase with fraud in law. It is sufficient if the channels

which would have led him to the truth, were open before him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution, if he was liable to suffer the consequences of his ignorance. The law will not permit him to shut his eyes when his ignorance is to benefit himself at the expense of another, when he would have had them open and inquiring, had the consequences of his ignorance been detrimental to himself and advantageous to the other." *Doyle* v. *Teas*, 4 Scam. R. 250. The doctrine of this case was again recognized by this court in the cases of *Rupert* v. *Mack*, 15 Ill. R. 541; *McConnell* v. *Read*, 4 Scam. R. 123, and in *Merrick* v. *Wallace*, 19 Ill. R. 486. And it should now be regarded as the settled doctrine of this court.

In the application of this rule this court has repeatedly held that, where the first purchaser is in possession, that it constitutes sufficient notice, and protects his rights as effectually as by recording his deed. 4 Scam. R. 117; 15 Ill. R. 540. The evidence in this case shows an open, visible possession of the premises at the time Cushman purchased and received his first deed with an erroneous description of the land. A portion of the premises were then inclosed, with a cabin and some fruit trees on it. The evidence seems to show that Howland gave Cushman notice, that either Reed or himself was the owner, which, is not very certain. He swears that he notified Cushman that Reed was the owner, while Green and Cushman testify that he stated that he was the owner. We deem it immaterial whether the notice was given the one way or the other, as Reed was the trustee, and held the legal title ; and Howland, by the trust deed, had a contingent remainder, dependent upon his surviving his wife. He then may be said to be the owner, although his estate is contingent. And had Cushman not known and been fully advised of the situation of the title, it is strange that he made no inquiry as to the nature and extent of his title. Had he asked the question, Howland would have undoubtedly fully explained the nature of his title. But his silence indicates that he was informed, and had no desire for any other or further information. And having notice to put him upon inquiry at that time, both by the possession of the premises and the notice given to him by Howland, he could not protect himself by waiting some months and then taking a conveyance without further inquiry, or by removing the improvements, that were sufficient notice when he first purchased. He might remove the improvements and have the premises in such a condition as not to indicate any possession to others not knowing the facts, but he could not remove or obliterate the notice which he had previously received, and he could not take by the second deed free

from the notice he had at and subsequent to receiving his first conveyance.

The evidence shows that the trust deed was delivered. That is evidenced by its being in the custody of the trustee. But if it was not delivered to the trustee at the date of its execution, and even if it were necessary that it should be delivered to him, it was taken East and delivered to him by Mrs. Howland before Cushman attempted to purchase, which would be sufficient. If a deed is delivered to a stranger, who has no authority to receive it, the grantee may ratify the act of the stranger, and the delivery will be good, even in cases where the deed is made without the grantee's knowledge. But in this case, if either Howland or his wife received the deed at the time of its execution, their interest in the title conveyed by the deed was such as to make such a delivery operative.

The question of good faith is one of fact for the jury, and while good faith will be inferred when the party having claim and color of title, holds possession and pays taxes for the period limited, bad faith may be shown by the other party. And whenever it appears that the occupant knew he was acquiring no title when he received his deed, or was acting in fraud of the true owner, the presumption of good faith is overcome. The evidence, however, fails to show a payment of all taxes legally assessed upon this land for seven successive years. Howland showed, by the collector's receipt, the payment of the taxes which had been assessed upon it for the year 1849, which bore date in March, 1850. He by that payment satisfied the tax and discharged both the land and owner from all taxes assessed upon the land for that year. From the moment that payment was made, there were no taxes in existence legally assessed for that year. The money existed, but its payment extinguished and discharged the tax, and when Cushman, in April following, paid an amount of money to the collector, corresponding in amount to the tax which had previously existed against the land, it was not in payment of the tax, because that had already been paid and had ceased to exist. There was at that time no tax legally assessed against the land, and his payment was not of a tax legally assessed, but it only amounted to a gratuity to the state, county, etc., which had no claim, and consequently no payment could be made to them or their officers. To constitute a payment, the money must be given in discharge of a debt, demand, assessment, or public charge, neither of which existed at the time Cushman gave this money to the collector. To permit the owner to defeat the occupant's payment, by paying an amount of money to the collector equal to the tax which had been previously paid by the occupant in discharge of all taxes assessed

on the land, would render the provisions of this statute inoperative, and would amount virtually to its repeal, as the holder of the better title would surely make such a payment once in seven years.

When the deed to Reed was recorded, it became notice to the world, and any person purchasing from Cushman after that time, took the title just as he held it. If Cushman was chargeable with notice when he purchased, his grantee, receiving a conveyance after the deed to Reed was recorded, would be chargeable with the same notice that Cushman had. It would, however, be different, if the trust deed to Reed had not been recorded in the proper office when they purchased. In that event, to resist successfully a conveyance from Cushman, actual notice or a knowledge of such circumstances as would put a prudent man on inquiry, would have to be brought home to his grantee before his purchase.

It is urged that the court erred in refusing to give plaintiff's eighth instruction asked. It was: " If at the time of the occupation by Alexander, under Howland, the only legal title or claim that Howland had was under the deed from Green to Reed, then the possession of Alexander was under said deed, whether Howland disclosed to Alexander that Reed was the owner or not, and Alexander's possession would be notice that he was in possession under this deed to Reed." The possession of the tenant is that of his landlord, and it is the same, whether he acquires it from the owner or from his agent. Alexander could not have disputed the title of Reed, if Howland was acting as his agent. But in this case, as a means of notice, the occupancy by Alexander was the same notice to Cushman as if he had made his contract with and received his lease from Reed. Had Cushman seen Alexander and inquired of him how he was holding, he would have referred him to Howland, from whom, by inquiry, he could have learned the nature and extent of the title, and this instruction should therefore have been given.

The court erred in giving defendant's third instruction, as a delivery of the deed to Howland or wife as the beneficial parties to this deed, or a subsequent ratification of a delivery to any person, by receiving, holding or acting under it, or receiving it without disclaiming the act, would be a sufficient delivery, and would relate to its execution. This instruction should have been so modified before it was given.

The defendant's sixth instruction, as given, was calculated to mislead the jury. It asserts that notice given by Howland to Cushman, that he was the owner of the land, is not sufficient notice to Cushman of Reed's deed. We have already seen that the *cestui que trust* has such an interest in the deed as to be for

the purposes and to the extent of the trust declared and created by its provisions, the beneficial owner of the land, and Howland, in equity, was an owner of the trust created by the deed, and had the contingent remainder of the property, to appoint, by sale, its disposition. And had Cushman asked how he held, or what his title or interest was, he would have doubtless been fully informed. And we are of the opinion, that such a declaration or notice was sufficient.

The proof of notice of the existence of an unrecorded deed, must be made in the same manner, and its measure must be the same as that which establishes a fact in other civil cases. This we have seen is the principle established in the cases of *Doyle* v. *Teas*, *Rupert* v. *Mack*, and *McConnell* v. *Read*, where it is asserted that any circumstance which is calculated to put a prudent man on inquiry, is sufficient. The ninth instruction given for defendant was therefore incorrect.

The defendant's eleventh instruction was not properly qualified by pointing out which deed from Green to Cushman was referred to, whether the first or last. If it was applied to the first, by which no title passed, it was wrong, and if to the latter, as an abstract proposition, it was perhaps correct; but as it was given, the jury may have understood it as referring to the first and not the latter of these two deeds. But we cannot see why it should have been given, even if modified, as the deed came from the proper custody, and was received by Howland, who had, as we have seen, such an interest as would authorize him to receive it for the benefit of the grantees.

There are no other errors perceived in the record, of which the plaintiff has a right to complain. But for these errors, committed by the court below, the judgment of that court must be reversed, and the cause remanded.

*Judgment reversed.*