## AUDITOR GENERAL *v.* PATTERSON.

1. TAXATION—PURCHASE OF STATE LANDS—SETTING ASIDE SALE —REFUNDING MONEY PAID FOR SUBSEQUENT TAXES.

Under the provision of the tax law that, where a sale is set aside, "the amount paid at the time of the sale" shall be refunded to the purchaser (Act No. 154, Pub. Acts 1895, § 73), a purchaser of state tax land is entitled, on the original sale's being set aside, to have returned to him, not only the amount paid for the State's title, but also the amount of the subsequent taxes paid by him as a condition to the purchase, as required by section 84 of the law (Act No. 206, Pub. Acts 1893); and it is immaterial that the sale had in fact been declared void at the time of his purchase.

2. SAME—LIEN OF STATE—ENFORCEMENT—CHARGES TO COUNTY.

The lien of the State is not lost as to subsequent taxes so returned, but may be enforced in the usual manner; the further provision of section 73, that the portion of the amount refunded that was originally assessed for county and township purposes shall be charged back to the county, applying only to the taxes for which the sale was made, and not to the subsequent taxes.

Appeal from Saginaw; Snow, J. Submitted October 6, 1899. Decided November 22, 1899.

Petition by Roscoe D. Dix, auditor general, for the sale of lands delinquent for taxes: On objections filed by Egbert H. Patterson. From a decree for petitioner, defendant appeals. Affirmed.

*Robert Holland,* Assistant Prosecuting Attorney, for petitioner.

*G. W. Davis,* for defendant.

LONG, J. The lands in question were returned delinquent for the taxes of 1894, 1895, and 1896, and were included in the petition of the auditor general for the year 1896 for the taxes levied in the year 1894, and at the sale in December, 1896, were bid in by the State. Subsequently the decree of sale was vacated, the bid canceled, and the taxes of 1894 decreed to be void. On December 6, 1897, Launt Thompson applied to the auditor general to purchase the State bid on this description of land, and on February 18, 1898, paid the taxes on the land for the years 1894, 1895, and 1896. A deed was issued to him under the State bid made for the tax of 1894, the auditor general at that time not having in mind that the decree for that sale had been set aside. This deed was issued February 21, 1898. On March 7, 1898, respondent, Patterson, wrote the auditor general, asking what had been done about the taxes of 1895 and 1896 on the lands, and received the following reply, dated March 12, 1898: "Replying to yours of the 7th inst., the taxes of 1895 and 1896 * * * were paid February 18, 1898." Thereafter, when the matter of the decree vacating the sale for the taxes of 1894 came to the attention of the auditor general, he canceled the sale, and refunded the money paid by Thompson on the State bid, and also the money paid by him for the taxes of 1895 and 1896. The auditor general then filed his petition for the sale of the lands for the taxes delinquent for the year 1895, which had been previously repaid to Thompson, amounting to $77.53. The respondent, having purchased the land, made and filed his objections to the petition, and

claimed that the auditor general was without jurisdiction to include said taxes in his petition, and that the court had no jurisdiction to decree said sum to be a lien on said lands, or to order a sale thereof in satisfaction of the taxes, as said taxes had been paid by Thompson, to whom the land had been sold and deeded.   The court below on that hearing overruled the objections, and entered a decree of sale, adjudging that the tax of 1895 remained a lien on the land.   From this decree the respondent appeals.

It is claimed by the respondent that by the provisions of section 84, Act No. 206, Pub. Acts 1893, Thompson was compelled to pay the taxes of 1895 and 1896 before he would be entitled to take the State bid for the tax of 1894, and that by such payment the lien of the State became extinguished, and could not be revived by the auditor general; that the payment of the taxes of 1895 and 1896 by Mr. Thompson was voluntary, and made after the title and taxes of 1894 had been vacated and canceled, and he was not entitled to have the same refunded; that voluntary payments cannot be recovered back,— citing cases to that effect.

As a general rule, the proposition is well sustained by the authorities; but provision is made by the tax law to meet such cases.   Section 73 of Act No. 206, Pub. Acts 1893, as amended by Act No. 154, Pub. Acts 1895, provides:

"If a sale made under this act is set aside by any court, the auditor general shall refund to the purchaser the amount paid at the time of the sale, with interest thereon at the rate of eight per cent. per annum from the time of purchase to the time when said sale is set aside, out of the general fund of the State, and charge back to the county the portion of the same originally assessed for county and township taxes, and the interest thereon."

We think this section means, by the words "the amount paid at the time of the sale," the whole amount; not only the amount paid for the State bid, but also the amount paid for the succeeding taxes.   Before the party purchasing

is entitled to his deed, he is compelled to pay all subsequent taxes which are a lien upon the land. We have repeatedly so held. The auditor general was, therefore, authorized by the section above quoted to refund to Mr. Thompson the amount paid by him for the taxes of 1895 and 1896. It does not follow that the lien of the State upon the lands for the taxes of 1895 and 1896 was discharged by this transaction. It is true that the payment of these taxes by Mr. Thompson would have discharged the lien but for the provisions of the statute. It was undoubtedly the intent of the legislature by this statute to provide for the contingency which arises here. Sales were frequently set aside by the courts for various reasons, even after the State had sold its bid, the payments having been made in good faith by the purchasers; and the tax law was evidently framed to protect such purchasers by providing that the amount paid at the time of the sale should be refunded to them by the auditor general. This leaves the taxes for the subsequent years which have been paid to stand as a lien upon the land, the same as though they had never been paid.

But counsel contends that the last provision of the section provides another remedy, and that it cannot be said that the lien remains; that is, that these taxes must be charged back to the county, so far as they were assessed for township and county purposes. This provision evidently has reference only to that part of the taxes that is decreed void by the court. Such taxes cannot be charged back upon the land, so that the State, county, and township must each lose its share of those taxes. But the taxes of the subsequent years are not void. There is nothing in the act by which it can be said that the lien for those years becomes extinguished.

The case, cited by counsel, of *Iowa Railroad Land Co.* v. *Guthrie,* 53 Iowa, 383, is not in point. In that case it did not appear that there was any statute of that State authorizing the repayment of the subsequent taxes to the purchaser, and the court held that, after such taxes

were paid, even by a stranger, the treasurer, after having received the payment of the taxes, could not treat the land as delinquent, and the subsequent sale was therefore void. The court quotes from section 870 of the Code of that State, which provides that the board of supervisors shall direct the treasurer to refund to the taxpayer any tax or any portion of a tax found to have been erroneously or illegally exacted or paid, and then says: "The tax in this case was not 'erroneously or illegally exacted or paid.' It was a legal tax, lawfully paid and lawfully received by the treasurer." The same is true of the Pennsylvania and Illinois cases cited.[1]

We think the court below very properly entered a decree for the sale of these lands. That decree is affirmed, with costs.

The other Justices concurred.

[1] *Montgomery* v. *Meredith*, 17 Pa. St. 42; *Morrison* v. *Kelly*, 22 Ill. 610; *Mason* v. *City of Chicago*, 48 Ill. 420.