GRIFFIN *v.* JACKSON.

1. TAXATION — TAX DEEDS — ISSUANCE — TIME — REDEMPTION — VALIDITY.

> A tax deed issued before the expiration of the period for redemption is void, and is not validated by the passing of the period without offer to redeem.

2. SAME—TAX TITLES—NOTICE TO REDEEM—PERSONS ENTITLED.

> A tax title purchaser is not required to serve the notice to redeem, provided for by section 140 of the tax law, on the grantee in a prior void tax deed, and the original owner is not entitled, when sued in ejectment, to take advantage of plaintiff's failure so to do.

Error to Saginaw; Gage, J. Submitted February 2, 1906. (Docket No. 97.) Decided July 9, 1906.

Ejectment by Albert A. Griffin against Andrew E. Jackson and another. There was judgment for plaintiff on a verdict directed by the court, and defendant Jackson brings error. Affirmed.

*W. E. Crane* (*G. W. Davis,* of counsel), for appellant.

*Albert McClatchey,* for appellee.

HOOKER, J. The plaintiff brought ejectment, claiming title in fee to the E. fractional ½ of N. W. fractional ¼, section 6, township 11 N., range 3 E., 87.44 acres of land. The defendant has appealed from an adverse judgment upon a directed verdict. There are three alleged titles involved in this case, which, stated chronologically, are as follows:

*First.* The original title. This stood in Andrew Jackson when this action was begun, as grantee of Timothy W. Jackson, who was then dead. Andrew Jackson's

title was taken subject to a land contract previously given by Timothy Jackson to Dennie Beebe.

*Second.* Allen's tax title. The land was regularly sold at tax sales, and bid in to the State, for the taxes for the following years, viz.: 1891, 1892, 1893, and 1894, covering the entire premises, and 1895, 1896, 1897, covering the north portion. The State's title was offered for sale at the delinquent tax sale of 1901, and bid in by Allen. He obtained a tax deed for the same on August 1, 1901, from the auditor general. In October, 1904, he quitclaimed his interest to Paxson, as trustee and committee of Timothy W. Jackson, an incompetent.

*Third.* Plaintiff's title. This is based on taxes assessed in 1889 and 1890, for which all of the land was bid in to the State, and so held for several years. These sales were afterward canceled, prior to the time of Allen's purchase, but the time and reason for cancellation, and at whose instigation it was done, do not appear. The land was afterwards readvertised, being included in a later petition, the year not stated, but doubtless of the year 1902. A decree was entered April 12, 1902, and the lands were bid in to the State in May of that year. A deed issued to him July 1, 1903, reciting his purchase from the auditor general as having occurred on August 2, 1902.

The meritorious questions seem to be: (1) Whether Allen's title was such as to be available against the plaintiff in ejectment; (2) whether plaintiff made the requisite proof of the service of statutory notice. The plaintiff's deed is based upon the latest decree, though it includes the earlier tax. So far as the record shows, the proceedings and the deed are regular. Defendant seeks to show an outstanding title in Allen or Paxson, as trustee under the quitclaim deed from Allen. To avail anything the deed to Allen must (1) have conveyed the title of the State; (2) it must be superior to the later deed.

That Allen's deed was issued several months before the period of redemption expired is shown by the case of *Monaghan* v. *Auditor General*, 136 Mich. 247. It was

therefore void when issued. It may be said that the period of redemption has long since expired, and that it should be treated as having conveyed the State's interest, and therefore conclusive, so long as the State does not question it. We are cited to no authority supporting such a view, and do not discover that appellee's counsel in any way allude to or attempt to answer plaintiff's brief upon this question. We doubt the propriety of such a holding. The auditor general acted under a statute without any discretion. His act, a ministerial one, was unauthorized, because premature. To say that the deed would become valid by lapse of time would be to open the door to parol proof on the question of attempts to redeem, when, a deed having issued, the auditor general would not be likely to permit redemption. The courts are not hasty in cutting off the rights of landowners whose lands have been sold for taxes, and we are of the opinion that this question should be governed by the usual policy. Allen's deed being void, it cannot be used to show title in another, thereby defeating plaintiff's claim. If it be said that a deed can now be issued, it is without force, as ejectment turns on legal, not equitable, titles. Prior to the time that Allen bid in the premises, the sale for taxes for 1889 and 1890 against the premises had been canceled. The land was readvertised for such years, and plaintiff's title grows out of a sale pursuant to such readvertisement. If it is paramount to a prior sale for the later tax, the Allen title becomes unimportant. Such seems to be the rule laid down in the cases of *Auditor General* v. *Patterson,* 122 Mich. 39, and *Auditor General* v. *Newman,* 135 Mich. 288; *Auditor General* v. *Sherman,* 136 Mich. 161; *Schulte* v. *Auditor General,* 131 Mich. 676. Nor can it be held that the plaintiff's title is invalid, because he did not purchase the title covered by Allen's void deed. The State had sold said titles to Allen. That appears to have been a valid transaction, and after expiration of the right of redemption Allen became entitled to a deed. There was nothing due to the State upon these titles, and plaintiff

was therefore under no obligation to pay such taxes, even if Allen did take a deed prematurely. The case of *Auditor General* v. *Clifford*, 143 Mich. 626, is distinguishable; the cancellation in that case having followed the purchase, while in this case it preceded Allen's purchase. The distinction is made in that case.

This makes it unnecessary to discuss a number of questions raised, especially that of priority of deeds, and constrains us to say that upon the face of the record plaintiff's tax deed stands as a valid paper. It would seem to follow that he should prevail in this case if he has served the proper notice upon all persons entitled to the same. This must depend upon our construction of the statute. The plaintiff caused a statutory notice to be served upon Andrew Jackson September 1, 1903. No other person was served with notice, and Andrew Jackson only is defending this action; Beebe having permitted judgment by default. It is apparent, therefore, that Jackson, having full notice, is, so far as this point is concerned, relying upon a technicality. He had seasonable notice and might have protected himself, had he cared to do so. At the time Griffin purchased the State's title at delinquent sale, Act No. 204, Pub. Acts 1899, was in force. Titles sold to Allen for taxes were outstanding, although the deed was void on its face. Assuming that Allen had not parted with his interest, he (Allen) was not entitled to notice under that law. But before Griffin obtained a deed the law was amended, requiring notice to the "grantee or grantees, under the last recorded deed issued by the auditor general" (see Act No. 236, Pub. Acts 1903), and it is contended that this law applies. Griffin's purchase gave him contract relations with the State. He purchased land that had been bid in to the State, upon which redemption had expired, and under the law then in force he would become entitled to a deed in one year, unless the owner should meantime redeem from his purchase, the right to do which was reserved by the State. *Monaghan* v. *Auditor General*, 136 Mich. 247. Before he could obtain posses-

sion under that deed he was required to give such owner a further opportunity to save his land, by a repurchase from him, after a notice in the form prescribed. By analogy to other land contracts, this contract with the State was not subject to changes by either without the consent of the other. The State could not require other notices to be served upon persons claiming under other tax titles, without impairing the obligation of the contract. We do not mean to intimate that one in privity with the person required to be served may not have the right to repurchase.

It is said that this new statute only affected the remedy, but is this so? There is nothing in the law of 1899 that required the purchaser to reconvey to any one except the owner of the regular title. There is nothing to indicate an intention to give such a right to the holders of earlier tax titles, unless we are to say that such holder is a "grantee under the last recorded deed in the regular chain of title to the land." We are of the opinion that by "regular chain of title" was meant the chain of title based upon the patent, and that one claiming under another tax title was not intended to be included, although we can imagine cases where it would be as important that he should be included—e. g., where his tax title has been sustained by law, and he is in possession under it—and in any case it would seem just that he should be. The legislature recognized this in the later statute, making special provision for notice to both classes. A practical difficulty in the way of doing this, by construction of the act of 1899, is that the act contemplates notice only to the one holding under the "last recorded deed in the regular chain," not to all persons claiming under any deed. If we may suppose two chains, one based on a tax deed and the other upon the patent title, we then have a last recorded deed under each. Should we say that the holder of the last tax title must decide at his peril which is the valid title, and serve upon the holder of that, or that he must serve on both, when only one chain is mentioned?

We think it more probable and more reasonable that the term " regular title " was used with reference to the original government title, and believe that to be the meaning, as generally understood by lawyers. Counsel for appellant indicates such understanding in his brief.

The point is made that the notice left the amount required to be paid uncertain. The only uncertainty related to the fees of the sheriff, prospective at the time the notice was drawn, and therefore uncertain. The notice was sufficiently definite. It is also said that the decree should not have been admitted, for the reason that the designation of the newspaper in which the publication was made did not state the year taxes referred to. This claim is answered by the cases of *Watts* v. *Bublitz*, 99 Mich. 586, and *Waldron* v. *Auditor General*, 109 Mich. 231.

Counsel complain that the court rejected evidence offered to show that the contract rights of Dennie Beebe had been transferred to his parents, Andrew and Mary Beebe. It was not claimed that either had sought to repurchase within the six months, and the question was immaterial.

The judgment of the circuit court is affirmed.

MOORE, J., concurred with HOOKER, J.

OSTRANDER, J.   I concur in affirming the judgment on the ground that Allen's tax deed was, upon the authority of *Monaghan* v. *Auditor General*, 136 Mich. 247, void on its face. Upon the authority of *Morse* v. *Auditor General*, 143 Mich. 610, mere lapse of time—that is to say, the passing of the redemption period—would not make it a good deed. Allen was, therefore, entitled to no notice from plaintiff, and want of such notice cannot aid the appellant.

McALVAY and BLAIR, JJ., concurred with OSTRANDER, J.