LITTLE *v.* BOUSFIELD & CO.[1]

1. MASTER AND SERVANT—PERSONAL INJURIES—CAUSE OF INJURY
—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.

In an action against a master for the death of a servant by
being caught by a set screw while attempting to replace ·
a belt upon a pulley, evidence examined, and *held,* that
though no witness testified that the set screw, rather than
the belt, caused the injury, the circumstantial evidence made
the question one for the jury.

2. SAME—NEGLIGENCE— CONTRIBUTORY NEGLIGENCE— PROXIMATE
CAUSE—QUESTION FOR JURY.

Evidence examined, and *held,* that the questions of defendant's
negligence, deceased's contributory negligence, and the proxi-
mate cause of the injury, were all for the jury under proper
instructions.

3. SAME—ASSUMPTION OF RISK —VIOLATION OF STATUTORY DUTY.

A servant does not assume the risk of the violation by the
master of a statutory duty imposed for the servant's protec-
tion.

4. STATUTES—ENACTMENT—VALIDITY—AMENDING AND REPEALING
ACTS.

Act No. 89, Pub. Act 1905, limiting the liability for negligent
injuries resulting in death, in actions prosecuted under the
survival act, does not conflict with section 25, article 4, of
the Constitution, prohibiting the amendment and repeal of
statutes by reference to their titles only.

5. DAMAGES—PERSONAL INJURIES RESULTING IN DEATH—STATUTE
—EFFECT OF REPEAL.

The repeal of Act No. 89, Pub. Acts 1905, limiting the liability
for negligent personal injuries, in cases where death results,
and the action is brought under the survival act, did not af-
fect pending cases.

Error to Bay; Collins, J.   Submitted May 7, 1908.
(Docket No. 102.)   Decided October 5, 1908.

Case by Lulu L. Little, administratrix of the estate of

---

[1] Rehearing denied December 21, 1908.

Alvah S. Little, deceased, against Bousfield & Company for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Affirmed conditionally.

*Gillett & Clark*, for appellant.

*De Vere Hall* (*J. H. Patterson*, of counsel), for appellee.

MOORE, J. This is a personal injury case. The plaintiff recovered a verdict for $7,293.75. The case is brought here by writ of error. Plaintiff is a sister of Alvah S. Little, whose injury forms the basis of the action. He was injured July 24, 1905. Defendant owns and operates a factory for the manufacture of wooden pails and tubs. Logs are sawed into short bolts and the bolts into blocks, from which the staves are made. This work was done on the ground floor of the mill. These blocks are thrown into an elevator which carriers them to the second floor of the mill. The elevator sometimes clogged, stopping the elevator and the shaft which operated it. This shaft obtained its power from a countershaft 30 feet away. These shafts were 8 or 10 feet above the floor. The ends of the countershaft were supported on heavy timber posts. There was a heavy belt tightener supported in a wooden frame nearly beneath and near the shaft which pressed against the lower side of the belt, and was held in place by a heavy weight. The belt connecting these two shafts was of leather eight inches wide. On the day of the injury Mr. Little was employed as helper on the machine which split the bolts into blocks. Charles Blaine was operating the machinery of the bolter. When the elevator clogged and the elevator shaft stopped, the belt stopped with it, but the countershaft kept on revolving, so that the pulley on the countershaft slipped under the belt as it revolved until the belt slipped sidewise off the pulley and dropped upon the shaft. This was what usually happened when the elevator clogged. It was the prac-

tice in defendant's mill, after the clogging was remedied, for the man who was helping on the bolter to take a ladder and climb to the countershaft, and lift the belt from the shaft, and put it upon the pulley by hand.   Mr. Little had been working for the defendant a number of years. While working there he had occasion before the accident to replace the belt many times.   Photographs were offered in evidence showing the shaft, the pulley, and their surroundings.   At the left or west end of the shaft is a collar to prevent any end play of the shaft.   In this collar on the day of the injury was a square-headed set screw projecting about half an inch.   At the right or east end of the shaft was the pulley upon which the belt ran.   The distance from the collar to the pulley was stated by plaintiff's witnesses as two feet.   Defendant's superintendent gave its distance as two feet, four inches.   There were two ladders which were usually kept within a few feet of this shaft.   One of these ladders was a long ladder, with iron hooks at the top that go over the shaft.   Defendant's superintendent testified that the long ladder was made for use in climbing to the shaft.   Plaintiff's witnesses testified that both of these ladders could be, and were, used by the men to climb to the shaft and replace the belt.   There was testimony that the short ladder was usually used.   It was lighter and easier to handle, and it was claimed that the man using it could get nearer his work.   On the day of the injury the elevator clogged, and the belt dropped off the pulley upon the shaft.   Mr. Little took the short ladder, and climbed to replace the belt.   Some of the witnesses saw him start to climb the ladder.   After he reached the top their attention was called by an outcry, and they saw him pulled over the shaft.   After being carried over the top of the shaft, it is claimed that his body could not pass between the shaft and the timbers.   The revolving shaft gradually twisted the clothing from his body, so that his body was stripped bare, and he was hanging by the clothing of his legs and ankles when the shaft was stopped.   His left arm was bare and had been

torn off between the elbow and the wrist, and was lying on the floor. He was also cut across the nose. He was taken to the hospital, where the stump of his arm was amputated. He remained in the hospital about three weeks, and was confined to his house for two weeks thereafter. In July, 1906, he commenced an action for the recovery of damages. Later than this he died. The suit he had commenced was discontinued and this one was commenced.

The question of the connection between the injury and death is a controverted question. The case was submitted to the jury on plaintiff's theory that, at the time of the accident, Little received a blow on the side of his head which, with his other injuries, aggravated his previously existing ear trouble, and that the accident also contributed to his death by lessening his powers of resistance to disease. It is defendant's theory that his death was due to disease, entirely independent of the injury. It is plaintiff's theory that the sleeve on the left arm of Mr. Little was caught by the set screw on the west end of the shaft. The defendant claims that there is no proof that he was caught by the set screw; that the cause of the accident is conjectural, it being more probable that his hand was caught between the belt and the pulley. The declaration contains five counts. Upon the trial all of these counts were abandoned, except the fourth one. A motion to direct a verdict was made at the close of the evidence. This was denied. A motion for a new trial was made on the ground that the verdict was against the weight of the evidence, and that the damages were excessive and unreasonable. This motion was overruled, the circuit judge filing his reasons therefor in writing, which were to the effect that the verdict was not against the weight of evidence, and was not excessive.

The principal questions involved, as stated by counsel for appellant in his brief, from which we quote—

"Are based on the refusal of the court to direct a verdict for the defendant, and upon his overruling of defend-

ant's motion for a new trial.    An important question, also,
is whether the measure of damages should be governed by
Act No. 89, Pub. Acts 1905, which limits the damages re-
coverable in fatal cases to the pecuniary loss of the next
of kin.    This act was in force at the time of the injury,
also when this action was commenced, and at the time of
the first trial and disagreement, but was repealed before
the second trial.    The other questions involved refer prin-
cipally to the admission and rejection of evidence, the re-
fusal of requests to charge, and the charge as given."

We may say at the outset that, as to the assignments
of error relating to the admission of testimony, we have
examined them carefully, but do not deem it necessary
to discuss them.    As to those assignments of error, we
think they are not well taken.    This is true, also, of
the other assignments of error to which we do not further
refer.

The fourth count in the declaration reads as follows:

"Plaintiff further alleges that under the provisions of
section 8 of said Act No. 113 of the Laws of this State for
the year 1901, as amended, it then and there became and
was the duty of defendant to have provided the said belt-
ing with a proper safeguard and said shaft with a loose
pulley to receive such belt when so forced off.    Plaintiff
avers that defendant then and there knowingly and
wrongfully omitted its duty in that behalf, in that it
knowingly and wrongfully failed to provide such belting
with any safeguard and such shaft with a loose pulley to
receive said belt when so forced off, in consequence where-
of, as intestate was so replacing such belt on said pulley
in the manner so provided, and in the exercise of due care
on his part, the clothing of his left arm was caught by
said set screw and he involved in said moving shaft, and
thereby seriously, dangerously and permanently injured,
as hereinafter set forth, so that in consequence thereof on,
to wit, the 8th day of December, 1906, he died, to plain-
tiff's great damage, to wit, in the sum of $10,000."

Later in the declaration was a detailed statement of the
accident and its effect upon the deceased, as claimed by
the plaintiff.

It is insisted the court should have, directed a verdict:

(1) Because the case was conjectural.

(2) Because no negligence was proved.

(3) Because deceased was guilty of contributory negligence.

(4) Because the negligence complained of was not the proximate cause of the injury.

(5) Because the risk was assumed.

Each of these propositions is argued at great length. The portion of the statute referred to in the declaration which is material here reads as follows:

"It shall also be the duty of the owner of any factory, or his agent, superintendent or other person in charge of the same, to furnish or supply, or cause to be furnished or supplied, in the discretion of the factory inspector, where machinery is in use, proper shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys. All gearing or belting shall be provided with proper safeguards, and wherever possible, machinery shall be provided with loose pulleys. All vats, saws, pans, planers, cogs, set screws, gearing and machinery of every description, shall be properly guarded when deemed necessary by the factory inspector." Act No. 113, Pub. Acts 1901, § 8.

1. Upon this branch of the case the judge charged the jury:

"Plaintiff cannot recover unless you find that the injury was caused in the precise way alleged in the declaration. The declaration alleges that the sleeve of the deceased was caught by the set screw, and does not claim that the accident was caused in any other way. If, therefore, you find that the injury was caused by the catching of intestate's clothing on the collar, shaft, pulley, or belt, instead of the set screw, or by the catching of some part of intestate's person or clothing between the belt and the pulley, or in any other manner, except the catching of plaintiff's sleeve on the set screw, then you cannot find a verdict for the plaintiff, even if you find that defendant was negligent in some other respect."

It is argued that it is entirely conjectural what caused the death of Mr. Little, and that the evidence indicates he was caught by the belt, instead of his clothing being

caught by the set screw. It is true no witness swore that the set screw did the mischief. It is equally true that no one swore the injury was caused by the belt. There was, however, much circumstantial evidence from which the inference could be fairly drawn that the set screw caught in the sleeve of the deceased, and did the mischief. The question as to how the injury was caused was within the province of the jury. *Morton* v. *Railroad Co.*, 81 Mich. 423.

2, 3, and 4 may be considered together. Three large photographs were introduced in evidence showing the situation. The witnesses described what they saw and heard just before, during, and immediately after, the accident. We think the testimony was such that as to each of these propositions it was the duty of the trial judge to submit them to the jury under proper instructions. This he did.

5. It is insisted the risk was assumed. That contention is no longer tenable under *Swick* v. *Cement Co.*, 147 Mich. 454, and the recent cases of *Layzell* v. *Coal Co.*,[1] and *Capeling* v. *Coal Co.*,[1] in which opinions were handed down this term. A reversal is urged because: (*b*) The jury should not have been permitted to find that death resulted from the injury. (*c*) A new trial should have been granted. (1) The verdict was against the weight of the evidence. (2) The verdict was excessive. (*d*) The damages should have been governed by Act No. 89, Pub. Acts 1905.

(*b*) It is insisted that death was not the result of the injury, but that deceased had recovered from the injury, and that his death was caused by disease not traceable to his injury. A great deal of evidence pro and con upon that branch of the case was given. We think the testimony made a question for the jury, and they were properly instructed in relation thereto.

(*c*) The trial judge filed his reasons in writing for overruling the motion for a new trial, and found the verdict

---

[1] Withheld from publication pending rehearing.

was not against the weight of the evidence. If we follow the rule stated in *Hintz* v. *Railroad Co.*, 132 Mich. 305, and *Line* v. *Railway Co.*, 143 Mich. 163, and the cases therein cited, we think it clear we ought not to disturb the verdict because against the weight of evidence. The judge also found the verdict was not excessive. For reasons which will appear later, we deem it unnecessary to discuss that feature of the case.

(*d*) Should the damages have been governed by Act No. 89 of the Public Acts of 1905 ? Counsel for the appellee says no, because that act was repealed before the last trial, and before the verdict and judgment. He insists that Act No. 89 simply related to the remedy, and that, when it was repealed without a saving clause, and given immediate effect, even though Mr. Little was hurt and this action was begun while the law was on the statute book, when it was repealed, plaintiff can recover the same as though the law never existed. It is also insisted that Act No. 89 is void because contrary to a provision of the Constitution reading:

"No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length." Constitution of Michigan, art. 4, § 25.

Act No. 89 is as follows:

"An act to prescribe the measure of damages in actions for negligent injuries to persons where deaths result, and where the actions are prosecuted under the survival act, and to provide for the distribution of the amounts paid on account of such damages, without participation by creditors of the deceased.

"*The People of the State of Michigan enact:*

"Section 1. In all actions for negligent injury to persons hereafter prosecuted by the executor or administrator of an injured person, under the statute which declares that said actions shall survive, the measure of damage in each case, shall be such a sum as the court or jury shall deem fair and just with reference to the pecuniary injury, resulting from the death of the injured person, to those

persons who may be entitled to such damages under the law providing for the distribution of personal property left by persons dying intestate, and the amount recovered or paid in settlement of such damages shall not be subject to the claims of creditors of the deceased, but shall otherwise be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate.

"SEC. 2. All acts or parts of acts in anywise contravening the provisions of this act are hereby repealed.

"This act is ordered to take immediate effect."

We think a reading of the title of the act and the act itself shows that it does not come within the constitutional provision quoted. Act No. 89 was construed in *Davis* v. *Railroad Co.*, 147 Mich. 479, where it was held that its provisions did not control as to cases pending when it took effect. The record discloses that, if its provisions apply to the case at bar, the measure of damages at the time of the first trial of the case would amount to $4,528, while the jury upon this trial, proceeding upon the theory, under the instruction of the court, that Act No. 89 did not control, assessed the damages at the sum of $7,293.75. We think the repeal of Act No. 89 did not affect pending cases, and, unless plaintiff will remit the amount of the judgment to $4,528 with legal interest from the date of the first trial, the judgment will be reversed.

In case she does so remit, the judgment will be affirmed. Defendant should have costs of this court.

OSTRANDER, HOOKER, CARPENTER, and MCALVAY, JJ., concurred.