WELLER v. WHEELOCK.[1]

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—TAX SALES
   —NOTICE OF REDEMPTION—CHANGE OF STATUTE.
   Act No. 236, Pub. Acts 1903, amending sections 140 and 141 of
   the tax law (sections 3959, 3960, 1 Comp. Laws) by providing
   that the notice of purchase must be given to the owners
   "of any and all interests" in the land described, that pay-
   ment may be made to the register in chancery, and chang-
   ing the form of the notice accordingly, as applied to tax
   deeds issued before the amendment, affects the remedy of the
   tax purchaser only, deprives him of no substantial property
   right, and is not violative of the obligation of his contract.
   GRANT, C. J., and HOOKER and OSTRANDER, JJ., dissenting.

2. TAXATION — TAX SALES — NOTICE OF REDEMPTION — STATUTE —
   AMENDMENT—RETROACTIVE EFFECT.
   Act No. 236, Pub. Acts 1903, amending sections 140 and 141 of
   the tax law (sections 3959, 3960, 1 Comp. Laws) with respect
   to the notice to be served upon the owners of the original
   title, and the place of payment by the redemptioner, is not
   limited by its terms to titles acquired after it took effect,
   but applies to all notices served after it became effective.
   GRANT, C. J., and HOOKER and OSTRANDER, JJ., dissenting.

3. SAME—INHERITANCE TAX—PAYMENT—EJECTMENT BY DEVISEES
   —CONDITION PRECEDENT.
   Payment of the inheritance tax due to the State from an estate
   is not, by Act No. 195, Pub. Acts 1903, sections 3 and 5, made
   a condition precedent to the maintenance of an action of
   ejectment by devisees.

Error to Genesee; Wisner, J.  Submitted January 10,
1908.  (Docket No. 43.)  Reargued October 8, 1908.
Decided November 30, 1908.

Ejectment by Addison M. Weller and others against
Frank B. Wheelock, Lorenzo P. Wheelock, and Frank
M. Smith, impleaded with Fred J. Pierson.  There was

---

[1] This case was withheld from publication pending the motion for
a rehearing in Brown v. Lennane, ante, 686.

judgment for defendants on a verdict directed by the court, and plaintiffs bring error.    Reversed.

*Elbridge F. Bacon* and *Jonathan Palmer, Jr.*, for appellants.

*Colonel O. Swayze* ( *Edward S. Lee*, of counsel), for appellees Wheelock and Smith.

*McFarlan & Wilson*, for appellee Pierson.

MONTGOMERY, J.   This is an action in ejectment brought to recover the undivided six-sevenths of lot 17, in block B, of McFarlan & Co.'s Saginaw street addition to the city of Flint.   A judgment was entered for defendants by direction of the circuit judge, and plaintiffs bring error.

It appears not to have been disputed that the record title to the property in question from the United States stood in Sarah J. Pierson at the time of her death, on July 22, 1900, nor does it appear to be disputed that the six-sevenths' interest in the fee was conveyed by will to the present plaintiffs, subject to the life estate of Ephraim J. Pierson, the husband of Sarah J. Pierson.   The defendants claimed title by virtue of a tax deed executed by the auditor general to William O'Connor, trustee, on May 25, 1903, for the taxes of 1899.   On the 22d of August, 1900, Ephraim J. Pierson was appointed executor of the estate of Sarah J. Pierson.   He died on the 23d of March, 1903, and was succeeded in his office of executor through successive appointments, first by Charles S. Brown, and later by Homer J. McBride.   On the 4th of August, 1903, a notice was served upon Charles S. Brown, administrator de bonis non, signed by William O'Connor, trustee, and conforming, in all substantial respects, with the requirements of sections 3959, 3960, 1 Comp. Laws, as amended by Act No. 204, Pub. Acts 1899, and after the lapse of a period of six months, this suit was instituted. Two objections are made to the validity of this notice:

*First,* it is contended that by Act No. 236, Pub. Acts 1903, the requirements as to the form of notice were changed, and that the notice served in this case did not answer the requirements of the new statute; *second,* it is contended that, as the right to the undivided interest in this property had vested in plaintiffs prior to the date when notice could have been given to Mrs. Pierson, they are to be regarded as the grantees under the last-recorded deed in the regular chain of title to said land, within the meaning of the statute, and that service upon the administrator provided for by statute is only authorized when, at a time after notice is due, service might have been had upon the decedent.

Sections 3959 and 3960 were amended by Act No. 236, Pub. Acts 1903, and the amendment given immediate effect, so that the same was in force at the time of the service of the notice in this case. This amendment required notice to the owner or owners "of any and all interests in the land herein described," etc.; the words "any and all interests" having been inserted by amendment. The legislature also changed the form of notice, so that the latter directed payment to the tax purchaser or to the register in chancery of the county in which the lands lie; the latter provision for payment, namely, that to the register in chancery, being introduced by amendment. This is the contention of the defendants—and the court below accepted this contention—that upon the purchase of the tax title from the State the right to serve this notice in accordance with the terms of the statute then in existence became a part of the contract between the State and the purchaser, and that the same was not subject to subsequent change or modification, as such modification would amount to the impairment of the obligation of contracts. The court seems to have based its rulings on the case of *Eldridge* v. *Richmond,* 120 Mich. 586, and *Griffin* v. *Jackson,* 145 Mich. 23. In the case of *Eldridge* v. *Richmond* the purchase of the land was made from the State before there was any law in force requiring any notice by

the tax purchaser or giving any time for redemption by him. It was held that the right vested in the law could not be divested by a subsequent provision for period of redemption. The case is obviously distinguishable from the present. *Griffin* v. *Jackson*, supra, was determined on other grounds, it being held that the deed was void on its face, but there is language employed in the opinion of Mr. Justice HOOKER which gives support to the holding of the circuit judge. It was not concurred in by the full bench, and was not necessary to a decision of the case, and it therefore has not the weight of authority. It is not necessary in this case to determine whether, in so far as the amendment of 1903 attempted to confer a right upon another class, namely, purchasers under tax titles, it was ineffective, in that it impaired the obligation of contracts. That question is not involved in this case. What we are here dealing with is the form of notice, and the requirement that it shall in form be directed to the owner or owners of any and all interests described and that it shall give notice of the right to make payment to the register in chancery of the county in which the lands lie. We are constrained to hold that the circuit judge was in error in reaching the conclusion which he did. The amendment of 1903 did not shorten the period of redemption. It divested the tax purchaser of no substantial right by simply changing the form of notice, and providing that the payment for redemption might be made to the register in chancery. The amendment affected the remedy of the tax purchaser only, and not any substantial property right.

The case in this respect is not distinguishable from that of *Curtis* v. *Whitney*, 13 Wall. (U. S.) 68. In that case the plaintiff became purchaser at a public sale for delinquent taxes of a tract of land, and received the proper certificate authorizing him to a deed at the end of three years if the land was not redeemed. After the sale, and something over a year before the expiration of the three years, the legislature passed an act providing that, where any person was found in the actual occupancy of the

land, the deed should not issue, unless a written notice had been served on the owner of the land or on the occupant by the holder of the tax certificate at least three months prior thereto. The plaintiff succeeded in obtaining her deed without giving this notice, and when she brought suit to quiet title, it was held, by the supreme court of Wisconsin, that her deed was void for want of notice. The case was taken to the Supreme Court of the United States, and the question distinctly presented as to whether the statute of Wisconsin requiring such notice impaired the obligation of the contract created by the issue of the certificate of sale. The court say:

"The right of the plaintiff to receive her deed is not taken away, nor the time when she would be entitled to it postponed. While she had the right to receive either her money or her deed at the end of three years, the owner of the land had a right to pay the money, and thus prevent a conveyance. These were the coincident rights of the parties, growing out of the contract by which the land was sold for taxes. The legislature, by way of giving efficacy to the right of redemption, passed a law which was just, easy to be complied with, and necessary to secure, in many cases, the exercise of this right. * * * The authority of the legislature to frame rules by which the right of redemption may be rendered effectual cannot be questioned, and among the most appropriate and least burdensome of these is the notice required by statute."

If it is competent for the legislature to require a notice where none was required before, it would seem to be unreasonable to hold that the form of the notice and the conditions of payment required might not be changed by the amendment of the statute. As was said in *Coulter* v. *Stafford*, 56 Fed. 564, 6 C. C. A. 18:

"Under such acts no legal remedy of the holder of the tax certificate is taken away. He is simply required to observe a formality imposed by the statute. By the observance of this formality, all his rights are preserved to him."

See, also, *Gage* v. *Stewart*, 127 Ill. 207; *Oullahan* v.

*Sweeney*, 79 Cal. 537; *Herrick* v. *Niesz*, 16 Wash. 74; *State* v. *Krahmer*, 105 Minn. 422. It is not very material how we define the title which the purchaser from the State acquires. One thing is obvious, and that is that his title is subject to redemption for a period of six months. It is not then a title which is absolute as against all the world, and no enlargement of the period of redemption is made by the act of 1903. That act simply fixes the remedy. It puts upon the tax purchaser the burden of serving notice and of permitting a payment to be made either to himself or to the register in chancery. Such legislation is within the class of remedial legislation referred to and discussed in the various cases cited above.

It is suggested that this statute should not be construed as retrospective, but that it should only be held to have reference to titles acquired from the State after the statute took effect. The statute contains no such limitation in terms. It is unquestionably broad enough to include, and we think it manifestly was intended to include, all notices required to be given after the statute took effect. It is not in the nature of a new provision of law, but is a substitute for the pre-existing section 140. It prescribed the only notice which from the time of its enactment is required, and it would be difficult to infer a legislative intent that it was not to have effect at once, and it would appear to be ingrafting upon the statute an exception which is not expressed for us to hold that the legislative purpose was to make this applicable only to such lands the title to which should be thereafter acquired from the State. The general rule is:

"A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendments had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute as it stands after the amendments are introduced and the matters superseded by the amendments eliminated." Endlich on Interpretation of Statutes, § 294.

The rule is recognized that a statute should have prospective operation only unless its terms show clearly a legislative intention that it should operate retrospectively. Cooley on Constitutional Limitations (7th Ed.), p. 529. And although there is no doubt of the right of the legislature to pass statutes which reach back to, and change or modify the effect of, prior transactions, provided retrospective laws are not forbidden in terms by the State Constitution, and where no other objection exists to them than their retrospective character, a construction of a statute which has the effect to impair rights existing under previous statutes will be avoided if consistent with the express terms of the statutes. Id. See *Angell* v. *West Bay City*, 117 Mich. 688; *Broffee* v. *City of Grand Rapids*, 127 Mich. 89; *Todd* v. *Election Com'rs*, 104 Mich. 474 (29 L. R. A. 330). But by retrospective or retroactive laws, as the terms are used in this connection, is meant the law which takes away and impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, and the Michigan cases referred to plainly fell within this definition.

In *Todd* v. *Election Com'rs*, the statute of 1895 (Act No. 17, Pub. Acts 1895), which required an election by the candidate nominated by two political parties as to which party ticket he would request his name to appear upon, was held not to apply to an election at which he had no opportunity to exercise this choice because the time allowed him by the statute had elapsed before the law took effect. Had this law been held to apply to the election in question, it would clearly have affected the status of the candidate as fixed by pre-existing laws, and to have cut off the relator from the exercise of the right which it was plainly the purpose of the statute to confer upon him. So in the case of *Angell* v. *West Bay City*, supra, a similar question was raised. There a cause of action accrued to the plaintiff for an injury sustained by

him on the 15th of May, 1897. By an amendment of the charter of West Bay City a provision was for the first time introduced requiring that a person suffering an injury by reason of a defective street, sidewalk, etc., should serve a notice upon the clerk within 60 days after such injury shall have occurred. It was the plain purpose of the statute, of course, to give to the injured party 60 days after his injury occurred within which to serve this notice. It was held that the statute should not be applied to a case where the injury had occurred before the statute took effect, for the reason that he would not be allowed the time which the statute itself contemplated within which to serve the notice. While it was recognized that under our Constitution the case not having been one dependent upon contract, a retrospective law might be valid, yet it was held that such operation should not be given unless such intention of the legislature clearly appeared. The case of *Broffee* v. *City of Grand Rapids*, supra, followed this case, and it was said that, if the contention of the city was to prevail, persons having claims against the city would not be upon an equal footing, and a construction which would mark such a difference was of course not adopted. None of these cases rule the present. As already pointed out in the present case, by the amendment of the statute the only provision now in force requiring notice and fixing the form is that enacted by the law of 1903.

It is contended that the plaintiffs are not in a position to maintain this suit for the reason that the inheritance tax to the State has not been paid. Reliance is had upon Act No. 195, Pub. Acts 1903, which reads as follows (section 3):

"But no executor, administrator or trustee of an estate, in settlement of which a tax is due under the provisions of this act, shall be discharged and the estate or trust closed by a decree of the court, unless there shall be pro-

duced a receipt signed by the county treasurer and sealed and countersigned by the auditor general, or a copy thereof, certified by the county treasurer, or unless payment of the tax has been deferred as prescribed by section seven of this act."

Section 5 provides:

"In such case the administrator, executor, trustee or other person having in charge or in trust any legacy or property for distribution subject to such tax, shall deduct the tax therefrom; and within thirty days thereafter shall pay over the same to the county treasurer as herein provided. If such legacy or property be not in money, he shall collect the tax thereon as determined by the judge of probate from the person entitled thereto, unless such tax has been paid to the county treasurer. He shall not deliver or be compelled to deliver any specific legacy or property subject to tax under this act to any person until the tax assessed thereon has been paid to him or to the county treasurer."

If the State were here raising this question, there might be more doubt about it. But we think counsel have mistaken the effect of this legislation upon the title of the plaintiffs. No delivery of possession of the real estate to the devisees was necessary. Under the will these plaintiffs took title subject to the right of the executor to take possession of the same for the purposes of administration. The legatee might have had and defended possession in himself from the time the will was probated. *Rough* v. *Womer*, 76 Mich. 375. See, also, *Howard* v. *Patrick*, 38 Mich. 795. While it may be within the power of the executor to cause a sale of this land to be made for the purpose of paying the tax of the State, and while it may be within the power of the State to enforce this payment by similar action, this is a matter of no concern to the defendants, as subject to these rights the plaintiffs have shown a right to possession.

The other questions become unimportant. The judgment is reversed, and a new trial ordered.

BLAIR, MOORE, and MCALVAY, JJ., concurred with MONTGOMERY, J.

HOOKER, J. (*dissenting*).   June 19, 1902, certain land bid in for the State for the tax of 1899 was purchased by O'Connor from the auditor general, in accordance to law. May 25, 1903, a deed was issued to him in compliance with the statute then existing, and the title conveyed thereby was limited by the provision of Act No. 229, Pub. Acts 1897, as amended by Act No. 204, Pub. Acts 1899. This law (section 140) provided, in substance, that no writ of assistance should issue on behalf of a tax title owner until after he should have filed with the proper county clerk a return by the sheriff showing personal service by him upon the grantee or grantees, under the last-recorded deed in the regular chain of title to said land, and upon the mortgagee in the last-recorded mortgage, or his assignee of record, of a notice in said act prescribed. Section 141 required the tax holder to make a reconveyance of his interest in the property held under his tax deed to the parties in interest as appear of record, upon payment of certain sums, including interest and penalties, by any person entitled to such notice.   June 18, 1903, the statute was amended (see Act No. 236, Pub. Acts 1903) by the inclusion of the words "the grantees under the last recorded tax deed issued by the auditor general."   The form of the notice prescribed was also changed by inserting after the word "undersigned" the words, "or to the register in chancery of the county in which the lands lie."   Another change was made by adding the words "of any and all interests in" after the word "owners" in the address of the notice.   This act was given immediate effect.   Both statutes cited provide that if any person entitled to notice be dead, notice may be served upon the executor or administrator of such person, with like effect, etc.   August 4, 1903, a notice was served, in compliance with the provisions of the law of 1899, upon the administrator of Sarah J. Pierson, who was the last grantee of record in the regular chain of title, she having died July 22, 1900.   The plaintiffs claim to be devisees of Sarah J. Pierson.   The case seems to have

turned upon the question of the sufficiency of the notice. We do not discover any claim that there were any mortgagees, assignees of mortgages, or holders of tax title deeds entitled to notice, even were the law of 1903 to govern the notice. It does not appear when or how defendants became occupants of the premises. Counsel for the plaintiffs state the following as the errors relied on:

(1) The admission in evidence of the notice, the defect stated being the omission of the words "any and all interests in" from the address.

(2) The omission from the notice of the words "or to the register in chancery of the county in which the lands lie."

(3) The refusal of the learned circuit judge to direct a verdict for the plaintiffs for the above reasons, and upon his direction of a verdict for defendants.

The title of the State was sold, but it was subject to certain conditions which attach to such sale by reason of the law. On performance of those conditions the title in O'Connor would become absolute, and this deed is to be construed no differently than a deed given by a natural person, containing similar conditions, would be. And such conditions would be strictly construed against the grantor, and if the condition was in favor of a third party, it could be construed no less strictly as to him. This is a well-settled rule of construction. No one disputes the right of the plaintiffs to the benefits of a statutory notice. It was their right, and defendants' duty, to serve it upon the administrator, and when served, it was plaintiffs' right to a reconveyance on payment. The notice was served, and they did not pay. Instead, they say:

"We will dispute your right to possession for want of a notice such as the law requires. It is true that you did serve exactly such a notice as the State required, and as you agreed to serve when you bought the land from the State, but the legislature has seen fit to change that law by providing for a little different notice, and by extending rights to reconveyance to other persons than originally contemplated, and we construe that act to be retro-

active and to cover all cases of land owned under tax deeds, whenever they may have been given."

A comparison of the acts of 1897, 1899, and 1903 show very plainly the objects which the legislature sought to attain on each occasion.   Primarily it was to give one last opportunity to the owners to save their lands from the effects of their failure to pay taxes.   Up to the time of the sale to private persons the laws have always permitted landowners to redeem or repurchase their lands where bid in to the State, at any time.   When that happened, it was lost to them.   So by Act No. 229, Pub. Acts 1897, the State imposed a condition upon the purchase, viz., that an opportunity for repurchase with notice of such opportunity should be given.   This was a clear matter of grace, resting on no interest or right remaining in the owner. In that act this was secured to the grantee or grantees under the last-recorded deed to said land, mortgagee or assignee in recorded mortgage or assignment.   Two years later this act was amended, and the change made was a limitation of the right to grantees, mortgagees, etc., under the last recorded deed of the regular chain of title, while in 1903 the change made was by enlarging the *class* entitled to repurchase by making it include persons under the last recorded tax deed.   These were the substantial amendments, and it is not to be supposed that the legislature intended to enlarge the class entitled to reconveyance from persons holding deeds taken while the law of 1899 was in force.   In this case we cannot believe that the legislature sought to impose a duty to permit tax title owners, under a deed last recorded, regardless of its age, to redeem or repurchase, notwithstanding the State had sold its title upon no such condition, and I have no doubt of the invalidity of an act which should show such an intent as one impairing the obligation of contracts, and were a tax title owner asking such a construction for his benefit, would anyone say that he was right in his claim ? If not, this act should not be construed as retroactive, in

that regard at least. Now this chances not to be that kind of a case, yet it is necessary to hold this act retroactive to sustain the plaintiffs' contention, and to do it we are driven to the expedient of making a distinction between rights and remedies, by saying that the design was not to make this act retroactive as to an enlargement of the class, but was intended to be retroactive as to the form of the notice in all cases—an intention that there is not the slightest evidence of on the face of the amendatory act, and a construction which, in my judgment, would be anomalous, and another verification of the trite adage, that "hard cases make bad law." I think that this case is very clearly distinguishable, in this respect as well as others, from *Curtis* v. *Whitney,* 13 Wall. (U. S.) 68, *Gage* v. *Stewart,* 127 Ill. 207, *Herrick* v. *Niesz,* 16 Wash. 74, *Oullahan* v. *Sweeney,* 79 Cal. 537, and *Coulter* v. *Stafford,* 56 Fed. 564, 6 C. C. A. 18.

" A retroactive effect will not be given a statute in the absence of a manifest intent by the legislature, shown by the language, that it shall have that effect." *McIntosh* v. *Kilbourne,* 37 Iowa, 420.

That a statute shall be regarded as having prospective operation only, unless its terms show clearly a legislative intention that it shall operate retrospectively, has been a settled rule in this State. The above language is Judge Cooley's statement of the rule. See Cooley on Constitutional Limitations (7th Ed.) p. 529; *Ludwig* v. *Stewart,* 32 Mich. 27; *Harrison* v. *Metz,* 17 Mich. 377; *McKisson* v. *Davenport,* 83 Mich. 211 (10 L. R. A. 507); *Todd* v. *Election Com'rs,* 104 Mich. 478 (29 L. R. A. 330); *Atherton* v. *Village of Bancroft,* 114 Mich. 241; *Angell* v. *West Bay City,* 117 Mich. 688. The latter case involved a notice as a condition to bringing an action— quite as clearly a case of a statute affecting a remedy only as this case. Yet MONTGOMERY, J., speaking for four of the five judges, held the act not retroactive. This was followed in *Broffee* v. *City of Grand Rapids,* 127 Mich.

92, in an opinion written by Mr. Justice MOORE. In an opinion written by the late Justice LONG, concurred in upon this point by all of the judges who sat, a number of earlier Michigan cases were cited, and we append them for future reference: See *Todd* v. *Election Com'rs,* supra; *Heineman* v. *Schloss,* 83 Mich. 153; *Stitt* v. *Casterline,* 89 Mich. 239; *Smith* v. *Pinch,* 80 Mich. 332; *Finn* v. *Haynes,* 37 Mich. 63; *Maxwell* v. *Bridge Co.,* 46 Mich. 278; *Danville Stove & Manfg. Co.* v. *Kent Circuit Judge,* 88 Mich. 244. See, also, *Davis* v. *Railroad Co.,* 147 Mich. 479; *Philip.* v. *Heraty,* 147 Mich. 473; *Little* v. *Bousfield & Co.,* 154 Mich. 369; Endlich on Interpretation of Statutes, § 271; Potter's Dwarris on° Statutes, p. 163. In the latter work the rule is stated thus:

"Although the words of the statute are broad enough, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein."

Every judge who has sat upon this bench has sanctioned, if he has not expressed, similar sentiments.

Since the foregoing was written, another question has been raised which seems to require notice. Mr. Justice MONTGOMERY discusses the definition of "retroactive laws." I had supposed that there was no question about the retroactive nature of this law, if given the construction contended for by the plaintiffs, and that an important question was whether it should receive that construction. Counsel seem to have so understood it, and have not contended to the contrary. I must assume that this discussion was intended to have some bearing upon the case, and what is it, unless it be that, in the writer's view, the provisions of this act are not retroactive in their nature because found in a law which does not fall within the definition of "retroactive laws," and therefore the rule of construction hereinbefore stated has no application? I cannot assent to the apparent limitation upon

the term "retroactive" to be inferred from my Brother Montgomery's opinion. He says:

"But by retrospective or retroactive laws, as the terms are used in this connection, is meant the law which takes away and impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed."

This language will be found (substantially) in 23 Am. & Eng. Enc. Law (1st Ed.), p. 155, but there it is not the definition itself, but the illustration of it; the definition being: "It [a law] is retrospective when it applies to cases existing, as those," etc. Again, the definition given is:

"A retrospective or retroactive law is one which operates upon matters which occurred, or rights and obligations which existed, before the time of enactment." 23 Am. & Eng. Enc. Law (1st Ed.), p. 447.

No one can doubt that the illustrations fall within the term "retrospective," but is the converse true? Do they limit the application of the term? The difference between Mr. Justice Montgomery and myself upon this subject would not be important in this cause were it not that the limited definition adopted by him circumscribes the application to be given to the rule that a statute will be construed as prospective only, unless a retrospective effect is clearly intended. That rule has never been restricted to acts which destroy or impair vested rights acquired under existing laws, create new obligations, impose new duties, or attach new disabilities in respect to transactions already passed, but it has been applied to every law which, under the contention of counsel, was said to operate on matters which occurred before the time of enactment. If this is not so, why not cut the "Gordian knot" by saying that this is not a retroactive law, and for that reason covers the case and needs no construction, its terms not being uncertain, thereby avoiding the application of the other rule, stated by Mr. Endlich thus:

" The rule to be derived from the comparison of a vast number of judicial utterances upon this subject, seems to be, that, even in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal, and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention." Endlich on Interpretation of Statutes, § 271.

The judgment should be affirmed.

GRANT, C. J., and OSTRANDER, J., concurred with HOOKER, J.

GRANT, C. J. (*dissenting*). The tax deed in this case was issued before the amendment of the law as to notice. The State had then parted with its title, which is conceded to be valid. It deeded it subject only to the right to a reconveyance upon the terms of the statute as it then existed. The purchaser's obligation or agreement with the State was to give the original owner a notice as the law then stood, not as it afterwards might stand. The State could not impose any further burdens upon the tax purchaser thereafter without the consent of the other party to the contract. Suppose that when O'Connor obtained the State's title, there had been no law providing for notice to the original owner and his right to a reconveyance upon certain terms, could the State thereafter enact a law providing for such notice and reconveyance as to O'Connor's title? If the State could not, it must be because the State could not pass a law impairing the obligation of contracts. That the State could not do this is beyond question. If the State cannot impair its obligation by such a law, for the same reason it cannot impose additional requirements upon a purchaser who has purchased subject to the conditions then imposed. For these reasons

it seems to me that the tax purchaser was required to give only the notice as it existed at the time of his purchase.    I the more readily reach this conclusion because as to all essentials the notice was sufficient, and the original owners have no excuse for insisting upon technicalities.

I therefore think the judgment should be affirmed, and concur in the opinion of Mr. Justice Hooker.